JULIE ANDREWS,

       Plaintiff,

    v.

LINDA GERACE, et al.,

       Defendants.

No. 13 CV 1521

Judge Manish S. Shah

### MEMORANDUM OPINION AND ORDER

In the summer of 2010, Julie Andrews and her sister, Linda Gerace, became co-owners of two corporations located in Maple Park, Illinois. Andrews alleges that after the sisters bought the companies, Gerace, with the help of Gerace's husband and children, began to steal money and other property from the corporations. According to Andrews, Gerace and her family then attempted to cover up their misdeeds by hiding some of the stolen property and by cooking the corporate books—all to the detriment of Andrews, who failed to receive all of the company profits to which she was entitled as co-owner. In 2013, Andrews filed in federal court an individual civil action against Gerace and Gerace's family under the Racketeer Influenced and Corrupt Organizations Act. The complaint also included several state-law claims against the defendants, including fraud, unjust enrichment, and breach of fiduciary duty. The defendants now move to dismiss Andrews's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of

Civil Procedure. For the reasons discussed below, I grant in part and deny in part defendants' motion.

## I.    Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that any claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To satisfy these "notice" pleading requirements, the complaint need not set forth detailed factual allegations. *Id.* (citation omitted). But it must present enough "factual matter, accepted as true, [that the] 'claim to relief . . . is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Where a claim for relief sounds in allegations of fraud, however, the claim is subject to a heightened pleading standard. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949–50 (7th Cir. 2013) (citing Fed. R. Civ. P. 9(b)). A party alleging fraud must "state [their claim] with particularity," Fed. R. Civ. P. 9(b), including the "who, what, when, where, and how" of the fraud, *Beyrer*, 722 F.3d at 950. Malice, intent, or knowledge may be alleged generally. *See* Fed. R. Civ. P. 9(b).

Motions under Rule 12(b)(6) are meant "to test the sufficiency of the complaint, not . . . the merits" of the plaintiff's case. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.3d 583, 586 (7th Cir. 1989)). In considering a Rule 12(b)(6) motion to

dismiss, I therefore accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Beyrer*, 722 F.3d at 946 (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). I do the same for motions to dismiss brought under Rule 12(b)(1). *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) (citing *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012)).

## II.  Facts

In late June of 2010, Julie Andrews (a citizen of Florida, [37][1] ¶ 6) and her sister, Linda Gerace (a citizen of Illinois, *id.* ¶ 7), discussed the possibility of purchasing two businesses, *id.* ¶¶ 17, 315. One company, Sycamore Speedway & Associates, was a seasonal race track located in Maple Park, Illinois. *See id.* ¶¶ 16, 22, 26. The other, Winner's Circle & Associates, was a bar and restaurant, also located in Maple Park, Illinois. *Id.* ¶¶ 16, 22–23. Gerace told Andrews that if the two sisters became co-owners of the businesses, the companies "would be managed and operated fairly" between the sisters, and all profits would be split equally between them. *Id.* ¶¶ 17, 315. On July 30, 2010, the sisters each purchased 50 percent of each of the two companies. *See id.* ¶ 16. Linda financed the purchase of her own shares by taking out a loan from a bank in Florida. *See id.* ¶ 219.

After the sisters purchased the companies, Andrews alleges that Gerace— with the help of Gerace's family—began to steal money (and other property) from the businesses and thus deprive Andrews of profits to which she was entitled as co-

---

[1] Citations to the record are designated by the document number as reflected on the Court's docket, enclosed in brackets.

owner. For example, rather than delivering the companies' cash earnings to the businesses' bank accounts, as required by company policy, *see id.* ¶¶ 39–42, Andrews maintains that Gerace and Gerace's husband, Dan—along with their children Tiffany, Samantha, Brett, and Kelli; and Tiffany's boyfriend, Charles—worked together to pocket a portion of those earnings and then use the stolen funds to buy electronics, automobiles, and other items for the defendants' personal use, *see, e.g., id.* ¶¶ 63–65, 73, 84, 97, 112, 131–33, 141, 146–47. According to Andrews, Gerace (and daughter Tiffany) also used company monies to fund personal travel for the Gerace family, *id.* ¶ 69–70, and to pay for a graduation party for Gerace's daughter, Kelli, *id.* ¶ 72.

To cover up their theft, Andrews asserts that the defendants hid some of the stolen cash in various locations, including at Tiffany and Charles's home, in safety-deposit boxes at several banks, and in a locker at Dan's workplace. *See id.* ¶¶ 77, 116, 121, 238. In addition, says Andrews, Gerace (and others) tried to cover up their theft by denying Andrews access to company records and other property, *id.* ¶ 33–34, doctoring the companies' accounting books to reflect less profit than was actually earned by the businesses, *id.* ¶¶ 225–28, and, on multiple occasions, sending Andrews falsified earnings documents by mail, *see id.* ¶¶ 212, 214. Andrews maintains that the monthly checks she received from Gerace and Gerace's daughter Tiffany—purporting to total half of the entire profits earned by the businesses each month—were similarly inaccurate. *See id.* ¶ 220.

In February 2013, Andrews sued Gerace in the District Court for the Northern District of Illinois. [1]. Also named as defendants were Gerace's husband, Dan, their four children (Tiffany, Samantha, Brett, and Kelli), and Tiffany's boyfriend, Charles Olson. *Id.*[2] Andrews's amended complaint, [37], contained six claims, each asserted against all defendants: violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (Count I), *id.* ¶¶ 247–303; conspiracy to violate RICO (Count II), *id.* ¶¶ 304–313; common-law fraud (Count III), *id.* ¶¶ 314–24; conspiracy to defraud (Count IV), *id.* ¶¶ 325–29; unjust enrichment (Count V), *id.* ¶¶ 330–33; and breach of fiduciary duty (Count VI), *id.* ¶¶ 334–37.

## III. Analysis

In support of their motion to dismiss, defendants argue: (1) Andrews lacks standing to bring her RICO claims, *see* [44] at 13; (2) regardless of standing, Andrews's RICO claims are deficient and should be dismissed, *see id.* at 5–12; and (3) Andrews's state-law claims are also deficient and should be dismissed (or, if the RICO claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the other claims), *see id.* at 13–15. Because I find that Andrews lacks standing to bring her RICO claims—and, with one exception, also lacks standing to bring her state-law claims—I do not reach defendants' arguments concerning the sufficiency of those claims under Rule 12(b)(6). As I find that Andrews does have standing to bring an individual action for promissory fraud

---

[2] The companies' accountant, Marianne Anderson, [37] ¶ 153, was also named as a defendant. Andrews and Anderson later reached a settlement, and Anderson is no longer a party to this suit. *See* [75]; *see also* Reassignment Status Report, [83] at 2.

against Linda Gerace (the exception noted above), I do address the sufficiency of the allegations underlying that claim.

## A. Standing

### 1. The RICO Claims (Counts I and II)

Defendants posit that Andrews cannot assert an individual RICO action against the defendants because, as a shareholder of the two corporations, Andrews does not have standing to seek relief for injuries sustained directly by those companies (and only indirectly by Andrews). *See id.* at 13. Defendants are correct that, where the consequences of a RICO operation fall directly on a corporation and its shareholders suffer only by virtue of being shareholders, "the RICO claim belongs to the corporation, and not the shareholder." *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 959 (7th Cir. 1996) (citing *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990); *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989); *Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1178–79 (7th Cir. 1989)). Only where a shareholder has suffered an "individual and direct injury" does she have standing to bring a RICO claim on her own behalf. *Flynn*, 881 F.2d at 450.[3]

---

[3] The rule providing that corporate shareholders generally may not bring RICO claims for injuries sustained directly by the corporation reflects a more general shareholder-standing rule, discussed *infra*, which holds that "a shareholder . . . cannot sue for indirect harm he suffers as a result of an injury to the corporation," *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013) (citation omitted). The shareholder-standing rule is a prudential—not a jurisdictional—limitation on whether the court may hear a case. *Id.* Consequently, a shareholder may have suffered an injury sufficiently concrete to form the basis of a justiciable case or controversy under Article III, but may still lack prudential standing to sue because the direct injury was to the corporation and not to the shareholder herself. *See, e.g.*, *Nocula v. UGS Corp.*, 520 F.3d 719, 726–27 (7th Cir. 2008).

Andrews argues that she has alleged in her complaint a direct injury[4] and therefore has standing to bring an individual RICO action. *See* [50] at 13. I disagree. The heart of Andrews's complaint is her contention that Gerace, with the help of Gerace's husband and children, stole earnings and other property from the *companies* and wrongfully converted those stolen assets to personal use. *See, e.g.*, [37] ¶ 63 (alleging that Gerace took "thousands of dollars of cash paid in exchange for the [c]ompanies' goods and services"); *id.* ¶¶ 65–66 (alleging theft of "Money Cans full of cash," preventing "thousands of dollars of earnings and profits from being accounted for by the [c]ompanies"); *id.* ¶ 73 (alleging conversion of stolen profits into electronic equipment that Gerace gave to her family members).[5] Taking these allegations as true, it seems that whatever damage was done by Gerace *et al.* was done directly to the businesses—not individually and directly to Andrews.

---

[4] In examining Andrews's alleged RICO injury, I focus not on each of the individual predicate acts underlying the RICO claim, but on the harm Andrews claims to have suffered from the RICO violation as a whole. *See RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 687 (7th Cir. 2008) ("Although the plaintiff . . . must allege an injury resulting from one of the predicate acts, . . . courts must examine these acts in the context of the entire 'violation' when assessing . . . causation." (citing *Beck v. Prupis*, 529 U.S. 494, 506 (2000))).

[5] *See also id.* ¶ 84 (asserting that the defendants "developed a scheme to . . . convert stolen funds into a four-wheeler motor vehicle") (emphasis added); *id.* ¶ 91 (stating that Gerace's daughter Tiffany "stole[] and . . . misappropriate[d] money and other property derived from" the corporations) (emphasis added); *id.* ¶ 100 (alleging that Tiffany "took cash profits from" the companies); *id.* ¶ 122 (claiming that the defendants "devised a scheme to steal kegs of beer purchased by" the corporations); *id.* ¶ 131, 133 (stating that Gerace's daughter Samantha kept cash payments to the companies); *id.* ¶¶ 141, 146 (contending that Gerace's other children, Brett and Kelli, stole "profits and other property derived from" the businesses); *id.* ¶ 147 (alleging that Kelli "put[] . . . into her pockets, wallet, purse" monies paid to the companies).

Nor is Andrews's otherwise-indirect injury converted to a direct one merely because the profit payouts she received from company coffers amounted to less than what she would have received absent any wrongdoing by the defendants. Andrews maintains that the monthly checks sent to her by Gerace and Gerace's daughter Tiffany did not represent one half of what the businesses had actually earned in profits. *See id.* ¶ 220. But when viewed in the context of her complaint as a whole, the most logical inference to be drawn from this allegation is that Andrews received less in company payouts because, post looting, the companies had less to give. Andrews's assertion that she lost out on profits is no different from an assertion that, due to the defendants' ill behavior, Andrews suffered a decreased return on her investment in the corporations—which is precisely the type of injury that does *not* confer upon shareholders an individual right to sue under the RICO Act. *See Sears*, 912 F.2d at 892 (concluding that a "diminution in the value of their stock" was insufficient to generate standing for shareholders to bring an individual RICO action); *see also Flynn*, 881 F.2d at 449–50 (holding that shareholders were not "individually and directly injured," and thus did not have standing to bring a RICO suit, where the violation merely "decreased the value of the [shareholders'] interest" in the corporation); *Rylewicz*, 888 F.2d at 1179 (similar).

State law also confirms that Andrews does not have standing to bring an individual RICO action against the defendants. Although Andrews's RICO claim constitutes a federal cause of action, state law is instructive because the "standing" question under RICO is analogous to the question of whether, as a shareholder of

Sycamore Speedway and Winner's Circle, Andrews's claims against the defendants are by nature "direct" (to Andrews) or "derivative" of a corporate injury. The direct-or-derivative inquiry is governed by state law—more precisely, by the law of the state of incorporation. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (citing *Boland v. Engle*, 113 F.3d 706, 715 (7th Cir. 1997)); *see also Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996).[6] In this case, the state of incorporation is Illinois.

Illinois follows a standing rule similar to the one discussed above: where the rights of an Illinois corporation are implicated, shareholders do not have standing to bring an individual claim for relief unless they allege "something *more* than wrong to the corporate body," *Davis v. Dyson*, 387 Ill.App.3d 676, 689 (2008) (citing *Goldberg v. Michael*, 328 Ill.App.3d 593, 599 (2002)) (emphasis added). If the only injury to the shareholder is an indirect one—that is, if the injury was inflicted directly on the corporation and was suffered by the shareholder only because she owned shares in the company—the shareholder does not have standing to sue in her own right. *See Small v. Sussman*, 306 Ill.App.3d 639, 643 (1999) (quoting *Mann v. Kemper Fin. Cos., Inc.*, 247 Ill.App.3d 966, 975–76 (1992)).

Illinois courts would not classify Andrews's alleged RICO injury as a "direct" one. Under Illinois law, diversion of profits is essentially a payment of illegal dividends—"a classic injury to the corporation." *Small*, 306 Ill.App.3d at 643–44. In

---

[6] Indeed, the Seventh Circuit has in some cases looked to state law in determining whether a plaintiff has standing to bring an individual claim under the RICO Act. *See Lefkovitz v. Wagner*, 395 F.3d 773, 776–77 (7th Cir. 2005) (referring to the law of the state in which a partnership was organized to determine whether the plaintiff had a right to bring individual RICO and state-law claims).

*Small*, the Illinois Court of Appeals rejected the proposition that a shareholder of a closely-held corporation may bring a direct action where the other primary shareholder has simply diverted all of the company's assets to himself. *Id.* (citing *Frank*, 83 F.3d at 159). "Such diversion," the court explained, "affect[s] a *company's* performance generally, and . . . affect[s] shareholders only indirectly." *Id.* at 644 (emphasis added); *see also Frank*, 83 F.3d at 160 (explaining that Illinois has not embraced the proposition that one principal shareholder may file an individual action against another merely because the latter "hollowed out [the] business" (citing *Mann*, 247 Ill.App.3d at 977)).[7] The court in *Hamilton v. Conley*, 356 Ill.App.3d 1048 (2005), confronted a similar situation, and toed a similar line. In *Hamilton*, the plaintiff alleged that the defendant, another shareholder (and corporate officer), had funneled company assets to himself by transferring them to other companies owned by that shareholder. *Id.* at 1051, 1054. The court deemed the shareholder-officer's behavior a "classic example of self-dealing," and thus classified the plaintiff's claim as derivative. *See id.* at 1054 (explaining that "it has been settled law in Illinois [for more than 25 years] that a claim [of] self-dealing is a claim of injury to the corporation and . . . must be brought derivatively" (citing *Poliquin v. Sapp*, 72 Ill.App.3d 477, 480 (1979))).

The defendants in both *Small* and *Hamilton* had looted the corporation to line their own pockets. In both cases, the Illinois court determined that the

---

[7] *Frank* is a Seventh Circuit case (that I discuss further, *infra*) in which the court applied Illinois law to determine if the shareholder of a closely-held corporation could bring an individual action against another co-owner. 83 F.3d 158, 159–60 (7th Cir. 1996).

plaintiff's claim was a derivative one. So it is here. Andrews's allegations that Gerace and her family misappropriated and wrongfully converted company cash and property describe a direct injury to the corporations, not to Andrews individually. As "a byproduct of the damage" to the businesses, Andrews's purported injury "is not individually actionable" under Illinois law, *Davis*, 387 Ill.App.3d at 691–92 (citations omitted).[8]

Nor is Andrews's injury rendered individually actionable by her description, in certain allegations, of the allegedly pilfered assets as assets belonging directly and personally to her, *see, e.g.*, [37] ¶ 262 (referring to the theft of "money and other property *from Julie*") (emphasis added); *id.* ¶ 275 (describing the theft of "property exceeding $50,000 in value *belonging to Julie*") (emphasis added).[9] Andrews's attempt to dress up her otherwise-derivative injury as a direct harm is unpersuasive, because the costume-switch does not alter the fundamental nature of

---

[8] Andrews's injury is also distinguishable from those in cases where the Illinois courts did infer an individual right to sue. In *Sterling Radio Stations, Inc. v. Weinstine*, for example, the court concluded that the plaintiff shareholder had standing to sue in his own right, not simply on the corporation's behalf, because he had personally guaranteed a promissory note executed by the corporation (and therefore was individually liable for the corporation's failure to make payments on the note). 328 Ill.App.3d 58, 62 (2002). Andrews has alleged no such liability in this case. Nor is Andrew's "lost profits" injury comparable to the injury in *Kovac v. Barron*, a recent Illinois case in which the court also found the plaintiff had standing to bring a direct action. In *Kovac*, the plaintiff alleged that his co-shareholder had not only diverted corporate income to himself, but had also failed to pay the plaintiff the salary he was due. *See* 6 N.E.3d 819, 832–33 (Ill. App. Ct. 2014). Salary payments to a corporate officer are not the same as the kind of payouts of company profits that Andrews describes in her complaint. Whereas a salary amounts to compensation for work performed, profit payouts are essentially dividends, *see Small*, 306 Ill.App.3d at 644 (likening a diversion of profits to the payment of illegal dividends). Here, Andrews alleges only a reduction in profit payouts or dividends, not a failure to receive an agreed salary.

[9] *See also, e.g.*, *id.* ¶ 277–78, 280 (describing property "belonging to Julie"); *id.* ¶ 298–99 (property "misappropriate[d] . . . from Julie").

her claims. As the complaint as a whole makes clear, the money and property that Gerace and her family purportedly stole belonged not to Andrews, individually, but to the corporations. To the extent Andrews was injured by the theft, her injury was indirect.

Andrews's RICO claims are derivative of the corporations' claims and, consequently, cannot be brought by Andrews directly. Counts I (substantive RICO violation) and II (conspiracy to violate RICO) of the complaint are therefore dismissed under Rule 12(b)(1) for lack of standing.

### 2.    *The State-Law Claims (Counts III–VI)*

Defendants do not argue that Andrews also lacks standing to bring her state-law claims. But, as I explain *supra* at footnote 3, the RICO-based standing rule reflects a more general shareholder-standing rule, and the general rule also provides that shareholders—absent certain exceptions—may not seek relief in federal court for injuries suffered directly by the corporation. *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013) (citing *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008)). Questions arising under the general shareholder-standing rule may be raised by the court *sua sponte*, *see RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010) (citing *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993)), and I do so here.

As discussed above, whether a shareholder's claim is "direct" or "derivative"—and thus whether she has standing to bring an individual action—is a question governed by the law of the state of incorporation. *See Massey*, 464 F.3d at 645 (citation omitted); *see also Rawoof*, 521 F.3d at 762 (Ripple, J., dissenting)

("Although federal law generally controls the question of standing, whether the shareholder's claims are derivative or direct for purposes of the shareholder standing rule is controlled by the law of the state of incorporation . . . ." (citing *Massey*, 464 F.3d at 645)). Here again, the relevant state law is the law of Illinois, which provides that corporate shareholders may not bring an individual action to redress wrongs to the corporation unless the shareholder also alleges: (1) a "separate and distinct" injury; or (2) an injury "that involves a contractual right" independent of any corporate right. *Davis*, 387 Ill.App.3d at 689 (citing *Caparos v. Morton*, 364 Ill.App.3d 159, 167 (2006)). As Andrews does not allege or argue that a contractual right governs her claims, I assess for each of her state-law claims only whether she has alleged a sufficiently separate harm.

a.    Unjust Enrichment

In support of her unjust-enrichment claim (Count V), Andrews maintains that the defendants wrongfully took and converted to personal use money and other property "rightfully belong[ing] to" Andrews, and then refused to return what they stole. *See* [37] at ¶¶ 330–31, 333. Although she now characterizes the pilfered property as property belonging directly to her, Andrews is again playing dress-up with her claims. On the whole, the statements in Andrews's complaint—including (and especially) the allegations "common to all counts," *see id.* at 3, which Andrews incorporates by reference in her unjust-enrichment claim—illustrate that whatever assets were stolen were not Andrews's own but the property of the corporations of which she is merely a shareholder. The nucleus of her complaint is a purported

theft from the companies. For the reasons discussed above, Andrews does not have an individual right to seek redress for that injury.

Andrews's unjust-enrichment claim (Count V) is therefore dismissed for lack of standing.

b. <u>Fiduciary Breach</u>

Andrews also asserts a breach-of-fiduciary-duty claim against all defendants (Count VI). *See id.* ¶¶ 334–37. However, as defendants point out in their motion to dismiss, *see* [44] at 14 n. 5, Andrews alleges only that Linda Gerace owed Andrews a fiduciary duty in the first instance, *see* [37] ¶ 335. Andrews neglects to address any duty supposedly owed by any of the other defendants, none of whom is an officer or shareholder of the corporations. Although there are instances in which a non-officer, non-shareholder defendant owes a fiduciary duty to a shareholder plaintiff under Illinois common law, *see, e.g.*, *Mann*, 247 Ill.App.3d at 980 (describing a common-law duty owed by sellers of securities to individual investors), Andrews alleges the existence of no such duty here. Andrews's claim of fiduciary breach therefore must be dismissed to the extent it concerns any defendants other than Linda Gerace.

Whether Andrews may bring a direct claim of fiduciary breach against her sister Linda is more complicated. It is true that Gerace owed Andrews a fiduciary duty. *See Anest v. Audino*, 332 Ill.App.3d 468, 476 (2002) ("Shareholders in a close corporation owe to each other fiduciary duties similar to those of partners in a partnership.") (citing *Hagshenas v. Gaylord*, 199 Ill.App.3d 60, 71 (1990)). The question, then, is whether the mere fact that Gerace owed her sister a duty confers

upon Andrews an automatic right to sue for a breach. It does not. Andrews's allegations also indicate that Gerace was, if not a nominal officer of the corporations, at least a *de facto* one. *See, e.g.,* [37] ¶ 50 (describing Gerace's responsibility for the day-to-day operations of the companies). Gerace therefore owed a fiduciary duty to the corporations, as well. *See Anest*, 332 Ill.App.3d at 476 ("Individuals who control corporations owe a fiduciary duty to th[e] corporations . . . ." (citing *Kerrigan v. Unity Savings Ass'n*, 58 Ill.2d 20, 27 (1974); *Levy v. Markal Sales Corp.*, 268 Ill.App.3d 355, 364 (1994); *Graham v. Mimms*, 111 Ill.App.3d 751, 761 (1982))). And where the rights of the corporation are also in play, Illinois case law suggests that it is the nature of the injury—not the mere existence of a duty—that determines whether a claim of fiduciary breach may be brought on an individual basis.

In *Frank v. Hadesman and Frank, Inc.*, the Seventh Circuit addressed a set of facts similar to those presented here: one principal shareholder of a closely-held corporation filed an individual action against the other principal shareholder after the latter (allegedly) made off with the corporation's business and assets. *See* 83 F.3d at 159. The court focused not on the mere existence of a duty, however, but on the nature of the plaintiff's injury—and concluded that, under current Illinois law, the plaintiff did not have an individual right to sue. *Id.* at 160–61. The plaintiff in *Frank* could not bring an individual action against his co-owner under Illinois law because, in pleading that the co-owner's misdeeds had "hollowed out" the corporation, the plaintiff had pleaded an injury to the company, and thus had stated

15

a derivative—not a direct—claim. *See id.* at 160. Indeed, the Seventh Circuit explained that, even supposing the plaintiff had been a 50-percent shareholder (as Andrews is here), the Illinois courts still would not have permitted him to file a direct action against the other shareholder, because the purported injury stemmed from the theft of corporate, not personal, assets. *See id.* at 161. No exception existed in Illinois by which a shareholder might obtain "direct access to the courts" merely because the corporation was closely held. *See id.* at 161–62 ("Much of [the plaintiff's] argument amounts to a plea that we establish a special rule for close corporations, permitting wronged investors direct access to the courts without the . . . formalities of derivative litigation. . . . [But n]one of the Illinois cases . . . establishes . . . any discretionary power to treat a derivative injury as if it were direct.").

Three years later, the Illinois Court of Appeals confirmed that no such exception existed under Illinois law. *See Small*, 306 Ill.App.3d at 643 (observing that "no Illinois cases have adopted [a] rule" affording "minority shareholders the right to bring a direct action against co-shareholders when the corporation is closely held.") The *Small* court clarified that "[t]he law controlling whether an action is derivative or direct . . . requires a *strict focus on the nature of the alleged injury*"— that is, a close examination of whether the injury is to the corporation or to the individual shareholder when the rights of both are implicated. *Id.* at 644 (emphasis added) (citation omitted). In *Small*, just as in this case, the plaintiff claimed that a co-owner had breached a fiduciary duty by diverting corporate profits in order to line his own pockets, *see id.* at 642–43. And, as discussed previously, the Illinois

court classified such "self-dealings" as "a classic injury to the corporation," and prohibited the plaintiff from pursuing an individual remedy, *id.* at 643–44.

Andrews points to no authority indicating that *Small* (or *Frank*) has been overruled.[10] The focus of Andrews's complaint is a theft of corporate assets and a subsequent diversion of those assets to the defendants' pockets. As the *Small* court explained, this a "classic" derivative action that cannot be pursued by Andrews individually, notwithstanding the fact that Gerace, as a co-shareholder of a closely-held corporation, owed Andrews a fiduciary duty. Andrews's claim of fiduciary breach, insofar as it pertains to Linda Gerace, is dismissed for lack of standing. Andrews's claim of fiduciary breach as to the other defendants is dismissed for

---

[10] To the contrary, Illinois courts continue to maintain a "strict focus" on the nature of the alleged injury when determining whether an action may be brought directly. *See Alpha School Bus Co., Inc. v. Wagner*, 391 Ill.App.3d 722, 746 (2009) (citing *Sterling*, 328 Ill.App.3d at 62). A recent Illinois case, *Kovac v. Barron*, is also informative. In *Kovac* (also discussed *supra* at footnote 8), the plaintiff included in his complaint two separate counts based on fiduciary breach: one a simple breach-of-duty claim, and the other a constructive-fraud claim (in effect an allegation of fiduciary breach, *see* 6 N.E.3d at 832–33). The Illinois Court of Appeals concluded that, with respect to the constructive-fraud claim (Count V), the plaintiff, "as a 50% shareholder, sustained an individual injury and could bring a [direct claim] for those damages." *Id.* at 835. Importantly, however, the court did not opine that *because* the plaintiff was a 50-percent shareholder, he necessarily had suffered a personal injury and therefore had obtained an automatic right to sue on his own behalf. Featured prominently in the court's discussion of Count V was the fact that the defendant (the other 50-percent shareholder) had not only diverted income from the businesses but had also agreed to pay the plaintiff an equal salary and then failed to do so. *See id.* at 832–33. Whereas the plaintiff was permitted to bring a direct action based on Count V, which included the salary-based injury, the court concluded that he did not have standing to bring an individual action based on the general breach-of-fiduciary-duty claim (Count II), which included only an injury to the corporations (*i.e.*, the diversion of corporate income). *See id.* at 834–35. *Kovac* confirms that, under current Illinois law, the mere existence of a fiduciary duty between shareholders of a closely-held corporation does not automatically confer on those shareholders a right to bring a direct action for fiduciary breach when the rights of the corporation are also implicated.

failure to state a claim upon which relief may be granted, as they owed to Andrews no fiduciary duty at all.

c. <u>Fraud</u>

Andrews also brings fraud-related claims against all defendants. *See* [37] ¶¶ 314–24 (fraud, Count III); *id.* ¶¶ 325–29 (conspiracy to defraud, Count IV).

i. *Substantive Fraud*

Andrews alleges only a single substantive fraud claim (Count III). However, in support of that claim, Andrews asserts that she relied on two (sets of) misrepresentations. First, Andrews contends that *all* of the defendants made misrepresentations to Andrews in an effort to conceal from her the "predicate acts" underlying Andrews's RICO claims (*i.e.*, defendants' purported theft and conversion of company cash and other property). *See id.* ¶ 319. However, Andrews also alleges that on or before June 30, 2010—that is, before the sisters bought shares in the corporations—Gerace told Andrews that the businesses "would be managed and operated fairly between them and that all profits would be split equally," but that Gerace had no intention of keeping that promise. *See id.* ¶¶ 315–16. In effect, Andrews has alleged two separate frauds. I address them individually.

Defendants argue that Andrews's first claim of fraud (based on defendants' alleged misrepresentations concerning their theft from the companies) fails because, *inter alia*, the allegations supporting that claim do not meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil

Procedure. *See* [44] at 14. I need not reach defendants' argument because, as with Andrews's RICO and other state-law claims, there is a standing problem.

While at least some of defendants' purported misrepresentations were allegedly made to Andrews directly, *see, e.g.*, [37] ¶¶ 182–83 (alleging that Gerace's daughter Tiffany lied to Andrews when Tiffany sent her an e-mail stating that all of the companies' earnings had been deposited in the companies' accounts), others were not, *see, e.g.*, *id.* ¶¶ 136, 149–50 (alleging that Gerace's daughters Samantha and Kelli doctored the company books to conceal the defendants' theft). More importantly, the *injury* was not. Again, the centerpiece of Andrews's claim is that the defendants committed a wrong against the corporations: first by stealing from them, then by attempting to cover up the theft. As explained previously, this type of claim is not one that Andrews may bring directly; she must bring it derivatively on the corporations' behalf. Consequently, I find that Andrews does not have standing to bring a claim of fraud against all defendants.

My inquiry does not end here, however, because—as explained above— Andrews has pleaded not one, but two substantive frauds. Andrews's second claim of fraud (also presented as part of Count III), is grounded not in defendants' collective effort to conceal their theft from the companies, but in Gerace's representation to Andrews that if Andrews consented to buy into the corporations, the sisters would split the profits equally. *See* [37] ¶ 315. Defendants argue that this claim fails because Andrews has alleged "non-performance of a contractual

obligation" rather than a proper claim for fraud. *See* [44] at 14.[11] Andrews's claim of fraud against Gerace may sound in a (broken) promise, but this is not fatal to her claim.

To successfully plead a claim of fraud in Illinois, a plaintiff must allege: (1) a false statement of material fact that (2) is known or believed to be false by the party making the statement; (3) an intent by that party to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party as a result of their reliance. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (citing *Dloogatch v. Brincat*, 396 Ill.App.3d 842 (2009)). Where, as here, a claim of fraud is based on a "false statement of intent regarding future conduct," the claim is known in Illinois as a claim of promissory fraud. *Id.* at 570 (citing *Assoc. Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007)). Promissory-fraud claims are not actionable unless the false statement is shown to be "part of a scheme to defraud." *Id.* (citing *Assoc. Benefit Servs.*, 493 F.3d at 853). But the Illinois courts have interpreted the "scheme exception" so broadly that the exception has more or less obliterated the rule generally barring such claims. *See id.* (citing *Stamatakis Indus., Inc. v. King*, 165 Ill.App.3d 879 (1987)). According to the Illinois Court of Appeals, where a plaintiff pleads merely that the defendant made a promise that they never intended to keep, the "intentional misrepresentation amounts to a scheme to

---

[11] In their motion to dismiss, [44], defendants do not distinguish between Andrews's claim of fraud against all defendants and Andrews's claim of fraud against only her sister, Linda Gerace. However, for the purposes of considering their motion, I assume that defendants' contract-versus-fraud argument applies (at least) to the latter claim.

defraud," and the claim is actionable. *Gagnon v. Schickel*, 983 N.E.2d 1044, 1054 (Ill. App. Ct. 2012) (discussing the "scheme exception" as explained in *Gen. Elec. Credit Auto Lease, Inc. v. Jankuski*, 177 Ill.App.3d 380, 384 (1988)). Here, Andrews has alleged that Gerace made a promise—to split all profits equally with Andrews if Andrews bought 50 percent of the companies—that Gerace never intended to keep. *See* [37] ¶¶ 315–16. Andrews has pleaded an actionable claim of promissory fraud.

The next step is to determine whether Andrews's claim meets the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure. The Rules require that any party alleging fraud "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). In practice, the federal courts have interpreted the particularity requirement to mean that a plaintiff must allege in her complaint facts sufficient to show the "who, what, when, where, and how" of the fraud. *Beyrer*, 722 F.3d at 950.

Defendants argue that Andrews's allegations do not satisfy this standard. *See* [44] at 14. I disagree. Andrews asserts that on or before June 30, 2010 (*when*), in an effort to induce Andrews to buy into the companies, Gerace told Andrews (*who*) that the profits from Sycamore Speedway and Winner's Circle would be split between them (*what*), and that Gerace never intended to—and, in fact, did not—keep this promise after Andrews, in reliance on Gerace's statement, incurred debt in order to purchase her shares of the companies (*how*). *See* [37] ¶¶ 16–17, 272, 315–17. The only missing ingredient is the "where" of the fraud, but I find this detail to be irrelevant to Andrews's claim and thus its omission to be inconsequential. Andrews

has successfully pleaded, with the requisite particularity, at least four (of the five) elements needed to establish a claim of fraud against Linda Gerace: (1) a false statement—that is, a false promise—by Gerace (that profits would be split equally); (2) Gerace's lack of intent to keep this promise; (3) Gerace's intent to induce Andrews to act (*i.e.*, to buy shares in the corporations), and (4) action by Andrews in reliance on Gerace's statement (borrowing money to purchase company shares, then purchasing said shares).[12]

But has Andrews adequately alleged damages or injury as a result of her reliance on Gerace's false promise? Yes. Andrews asserts that Gerace promised an equal split between the sisters of any company profits, *see* [37] ¶ 315, and that when Gerace later broke that promise, Andrews lost out on more than $500,000, *see id.* ¶ 324. This is not a derivative injury because Andrews's claim of promissory fraud stems from events that took place *before* Andrews or Gerace bought any shares in the companies. The corporations themselves cannot complain of false promises intended to induce Andrews to invest in the corporations; only Andrews can do so. *See Mann*, 247 Ill.App.3d at 980 (concluding that a shareholder's direct claim of fraudulent misrepresentation should not have been dismissed for lack of standing because "only the plaintiffs and other investors who invested in the securities . . . could allege that misrepresentations . . . induced them to invest"). According to

---

[12] Andrews does not allege any details regarding Gerace's intent—*e.g.*, Gerace's purported intent to induce Andrews to act based on Gerace's promise, or Gerace's supposed lack of intent to ever keep that promise. But the absence of details concerning Gerace's state of mind is not detrimental to the viability of Andrews's claim because, even under the heightened-pleading standard, intent, knowledge, and "other conditions of a person's mind" may be alleged generally. Fed. R. Civ. P. 9(b).

Andrews, Gerace attempted to induce Andrews to purchase shares in the companies by making a promise, and then—when Andrews had bought in—Gerace broke that promise to Andrews's financial detriment. This is a wrong for which Andrews may seek an individual remedy.

There is also a subtle difference between the injury that Andrews claims to have suffered as a result of her reliance on Gerace's promise and the (indirect) injury Andrews allegedly sustained from the defendants' collective looting of the corporations. While both involve a diversion of profits—and thus implicate harm to the businesses—only the former includes an additional harm specific to Andrews. In reliance on Gerace's statements, Andrews took out a loan to pay for her shares in the corporations. *See* [37] ¶ 219. To the extent she received any profit payouts from the companies, Andrews asserts that she would use those funds to pay down the debt from the loan. *See id.* Viewing these allegations in the light most favorable to Andrews, see *Beyrer*, 722 F.3d at 946, I find it reasonable to infer that—inasmuch as Andrews received less in profits than she would have received had Gerace kept her promise to split all profits equally—Andrews was able to pay off less of her loan, thus incurring (further) monetary damage in the form of an increased amount of interest owed to the bank. This injury is not only specific to Andrews, but it is proximately connected to her reliance on Gerace's broken promise. Andrews's claim for promissory fraud may be brought directly.

Defendants' motion to dismiss is therefore denied insofar as it pertains to Andrews's claim of promissory fraud against Linda Gerace. The remainder of Count

III, which includes Andrews's general claim of fraud against all defendants, is dismissed for lack of standing.

> ### ii. Conspiracy to Defraud

In addition to her substantive fraud claims, Andrews also brings a claim against all defendants for conspiracy to defraud (Count IV). *See* [37] ¶¶ 325–29. As Andrews does not have standing to bring an individual action for fraud against all defendants collectively, I find that she also does not have standing to bring an individual conspiracy-to-defraud action against that same group of defendants. For the reasons discussed above, Count IV is dismissed for lack of standing insofar as it pertains to any purported agreement by the defendants to conceal their alleged theft from the corporations.

I have found that Andrews has adequately pleaded a promissory-fraud claim against Gerace, but Andrews's complaint does not state a claim for conspiracy: while Andrews asserts that Gerace made her promise "on behalf of the [RICO] Enterprise" and "in furtherance of the Enterprise's schemes," id. ¶¶ 17, 272, there is no allegation that Gerace *agreed* with the other defendants to (falsely) promise Andews a fifty-fifty split in advance of the purchase of the companies. Count IV is dismissed as to Gerace for failure to state a claim.

## B. Jurisdiction

Defendants argue that, should I dismiss Andrews's RICO claims (as I have done), I should decline to exercise supplemental jurisdiction over her state-law claims. But, as Andrews correctly points out, *see* [50] at 14, defendants' argument is

misplaced. I need not exercise supplemental jurisdiction where, as here, diversity jurisdiction permits a state-law claim to remain in federal court.

Diversity jurisdiction exists where the plaintiff and defendant(s) are citizens of different states and where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). The only claim remaining in suit is Andrews's claim of promissory fraud against Linda Gerace, and both diversity-jurisdiction requirements are satisfied as to that claim: Andrews is a citizen of Florida, while Gerace is a citizen of Illinois, *see* [37] ¶¶ 6–7; the amount in controversy exceeds $75,000, *see id.* ¶ 324 (alleging damages in excess of $500,000 as a result of the purported fraud).[13] Thus, the promissory-fraud claim may stand on its own, even without a separate federal "hook."

## IV.    Conclusion

For the reasons discussed above, defendant's motion to dismiss is granted in part and denied in part. The motion is denied as it pertains to Andrews's claim of promissory fraud against Linda Gerace. The motion is granted as it pertains to all other claims in the amended complaint, [37]. Claims dismissed for lack of standing are dismissed without prejudice. Claims dismissed for failure to state a claim upon which relief may be granted—that is, Count IV (conspiracy to defraud) as it pertains to Linda Gerace, and Count VI (fiduciary breach) as it pertains to all non-Linda-Gerace defendants—are dismissed with prejudice.

---

[13] As explained *supra*, Andrews does not distinguish in Count III between her claim of fraud against all defendants and her claim of promissory fraud against Linda Gerace. Drawing all inferences from Andrews's allegations in her favor, however, I assume that the damages pleaded generally in Count III apply equally to both of the frauds alleged in that count.

ENTERED:

Manish S. Shah
United States District Judge

Date: 9/15/14